## SOUTHLAND LIFE INS. CO. v. LLOYD.
### (No. 8281.)

Court of Civil Appeals of Texas. San Antonio.
Nov. 20, 1929.

Rehearing Denied Dec. 11, 1929.

Davenport, West & Ransome, of Brownsville, and Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

H. B. Galbraith, of Brownsville, for appellee.

SMITH, J. On June 11, 1928, the Southland Life Insurance Company, appellant, issued its policy, in the sum of $5,000 upon the life of Erle W. Lloyd naming Ethel V. Lloyd, the insured's wife, as beneficiary. By a rider of even date attached to and forming a part of the policy, it was further provided that, if the insured met his death by "violent, external and accidental means, exclusive of all other causes," the insurer would pay the beneficiary an additional sum of $5,000, or a total sum, under both policy and rider, of $10,000.

It was stipulated in the policy that, "if the insured shall die by his own act, either sane or insane, (within one year of the issuance of the policy) the liability of the Company shall be limited to the total amount of premiums paid by the insured." And it was stipulated in the rider that the liability therein provided for "does not cover death resulting directly or indirectly from . * * * self-destruction, intentional or otherwise, whether sane or insane."

Erle W. Lloyd, the insured, died within a year of the date of the issuance of the policy, from the effects of gunshot wounds received under undeterminable circumstances. Upon proper proof of the death of the insured, the company refused to pay the losses provided for, and, in a suit to recover thereon, Ethel V. Lloyd, the beneficiary, recovered judgment against the company for $10,000, the amount of the policy and rider, $1,200 statutory penalty, and $1,250 attorney's fees, also provided for by statute. The insurance company has appealed.

The deceased was a Cameron county farmer, and lived with his wife and two children, a girl aged 16, and a boy aged 14. On the day of his death, he and his wife and children were on a customary visit with his wife's parents, Mr. and Mrs. Skinner, in another part of the county. Early in the afternoon he and his wife and the latter's parents went in the parents' car to see his wife's brother at the latter's farm a few miles away, where they spent the afternoon pleasantly. Late in the afternoon the party started on the return trip. Just before reaching the Skinner home, they passed through a neighborhood thickly infested with rabbits. Skinner commented upon the number of rabbits thereabouts, and, while the two men were discussing the matter, the deceased suggested that he take a shotgun which Skinner had brought along in the car, and get out and shoot some rabbits, or a rabbit, as he and other members of the party had been doing earlier in the day. The deceased had on previous occasions gone out and shot rabbits as food for his dogs, and he suggested this as his purpose on this occasion. The car was stopped, deceased alighted with the gun and started off through the brush, while Skinner drove the car a short distance to clear the road for the passage of other cars. In this way the deceased was soon lost to view. A few minutes later, from four to seven minutes, the occupants of the car heard a gunshot, followed by an exclamation of distress. Getting out of the car they followed those sounds and found the deceased lying on the ground about 60 yards away, with a gunshot wound in the breast. He died a few moments later, without having spoken. The gun was found among the lower branches of a mesquite bush a few feet from the deceased, with the muzzle pointing towards deceased. Two matches, and an unlighted cigar, moistened and with the end bitten off, were on the ground by the deceased, giving rise to the inference that the gun had been discharged into deceased's body while he was in the act of lighting his cigar. The gun had "hair triggers," and had been known by Skinner, its owner, to discharge unexpectedly, from some unexplained cause, upon at least two prior occasions, and it is inferrable that it discharged from some such cause on this occasion. There is no affirmative evidence that

1072

the deceased actually discharged the weapon on this occasion, or that it was in his hands, or that he was even touching it when it dis-. charged. There is no evidence that he committed suicide; his conduct on that day and all the while before was normal and natural, and every circumstance leading up to the moment of the tragedy negatived any abnormal condition of mind at the time. The jury found, specifically, that he did not commit suicide, and that his death was accidental. These findings were thoroughly, amply, supported by the evidence in the case, as well as by wise presumptions in favor of both findings. In fact, appellant concedes both facts, that it was not suicide, and that it was accidental, and rests its appeal upon the sole contention that the undisputed evidence showed that the deceased met his death from a gunshot wound "self-inflicted," and that this bald fact brought the case within the exception in the rider, in that the death resulted from "self-destruction, intentional or otherwise, whether sane or insane."

In short, it is assumed by appellant that the insured's death resulted from "self-destruction" as contemplated in the exception, and that, no matter how the self-destruction was brought about, the exception applied, and the company cannot be held liable; and, specifically, that, even though the death may have been accidental, as found by the jury, yet, since it was brought about by the act of the insured himself, it was covered by the exception from liability. Pursuing its proposition to its conclusion, appellant's defense rests solely upon the assumption that the insured's death proximately resulted from some undisclosed act of his own.

We cannot subscribe to the assumption that the insured's death was actually brought about by self-destruction, or by his own direct act or acts. It cannot be said—it is quite difficult to even conjecture—that the deceased was holding the gun in his hands, or was in any way touching it at the time of its discharge. It is much easier to surmise that he set it against one of the nearby bushes, or across the limbs of the mesquite bush, where it was found, in order to free his hands with which to light his cigar, and that while he was so engaged the gun afterwards slipped, or settled from its own weight or the shifting or vibration of bush or limb, and its discharge thereby precipitated. It will be assumed that his death wound was inflicted by a discharge from his own gun, but the circumstances under which it was discharged, the agency through which the discharge was actually effected, are matters of pure conjecture, so that they must be resolved, if at all, by sheer presumption. When relegated to an election of presumption in such case, the law, abhorrent of the theory of suicide and slow to attribute human carelessness as the cause of

death or injury, will give effect to the presumption of accident.

The object of the rider to the policy here involved was to insure against the accidental death of the deceased, and this court will indulge no mere presumption of fact in order to give effect to an exception which would relieve the insurer from its sole obligation under that contract.

The judgment is affirmed.