HOHOLIK *v.* METROPOLITAN LIFE INS. CO.

1. INSURANCE—SUICIDE—BURDEN OF PROOF.

In beneficiary's action to recover under an insurance policy providing that if insured committed suicide within two years insurer would be liable only for premiums paid, the burden of proof was on the insurer to prove insured committed suicide where death occurred within a few days after policy became effective.

2. SAME—ACCIDENT BENEFITS—BURDEN OF PROOF.

In beneficiary's action to recover under life insurance policy plaintiff had burden of showing death was accidental in order to recover additional benefits for accidental death.

3. SAME—SUICIDE—VERDICT—EVIDENCE.

In beneficiary's action to recover under a life insurance policy providing that if insured committed suicide within two years after date of policy insurer's liability would be confined to amount of premiums paid, evidence *held*, to support finding of jury that defendant failed to sustain its burden of proof that insured committed suicide.

4. SAME—DROWNING—SUICIDE—PRESUMPTION.

In beneficiary's action to recover under a life insurance policy containing provision that if insured committed suicide within two years after date of policy, presumption existed that insured who was drowned did not commit suicide.

5. APPEAL AND ERROR—QUESTION RAISED FOR FIRST TIME IN SUPREME COURT—ADMISSIBILITY OF EVIDENCE.

Question as to admissibility of evidence tending to show falsity of answers contained in application for life insurance, not having been raised in trial court, may not be raised in the Supreme Court.

6. INSURANCE—SUICIDE—WAIVER OF DEFENSES.

Insurer under life insurance policy did not waive any defense it had under the policy where by a letter to beneficiary's attorney it had written asserting belief insured had committed suicide but reserving to itself the right to interpose any and all proper defenses.

7. SAME—ATTACHMENT OF APPLICATION TO POLICY—QUESTION FOR JURY.

Instruction that if application were not attached to policy upon delivery then questions as to misrepresentations by insured as to his use of intoxicating liquors in application for life insurance policy were not before jury, that it was presumed to have been attached and that burden was on plaintiff, beneficiary, to prove application was not attached by a preponderance of the evidence *held*, proper, where application was not attached at time of trial and there was evidence it was not attached when delivered, whether or not it was attached when delivered being a question for the jury.

8. SAME—ATTACHMENT OF APPLICATION TO POLICY—MISREPRESENTATIONS AS TO USE OF INTOXICATING LIQUORS.

In beneficiary's action under life insurance policy wherein insurer interposed defense that applicant made false answers relative to his use of intoxicating liquors in his application

for insurance, instruction that if application were attached to policy when delivered and that decedent used intoxicating liquors to excess, such misrepresentations relative thereto were material and voided the policy *held*, proper.

9. APPEAL AND ERROR—JURY ASSUMED TO HAVE FOLLOWED INSTRUCTIONS GIVEN.

The Supreme Court assumes that the jury obeyed instructions given by the trial court and returned a verdict in accordance therewith.

10. TRIAL—REFUSAL TO GIVE REQUESTED INSTRUCTIONS—ASSUMPTION OF CONTROVERTED FACT.

In beneficiary's action under life insurance policy in which question as to whether application was attached to policy when delivered was for jury, trial court's refusal to give requested instructions which assumed as a fact that the application was attached *held*, proper where, under jury's verdict, it must be assumed the jury found the application was not attached to the policy.

11. SAME—INSTRUCTIONS CONSIDERED AS A WHOLE.

An instruction must be considered as a whole and not by isolated portions.

Appeal from Dickinson; Bell (Frank A.), J. Submitted April 18, 1939. (Docket No. 94, Calendar No. 40,451.) Decided June 6, 1939.

Action by Agnes E. Hoholik against Metropolitan Life Insurance Company, a New York corporation, for sums due on a life insurance policy. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Ray Derham,* for plaintiff.

*Raymond Turner* (*S. W. Patek,* of counsel), for defendant.

SHARPE, J. Plaintiff is the beneficiary of a life insurance policy issued to her husband, Paul M. Hoho-

lik. The policy was in the amount of $2,000 and contained the so-called "double indemnity" provision providing for the payment of an additional $2,000 in case of accidental death. The policy became effective July 1, 1936, and on the afternoon of July 3, 1936, the insured's body was found in Lake Calhoun in the city of Minneapolis, Minnesota.

The policy contained the following clause:

"5. Suicide: If the insured, within two years from the date of issue hereof, die by his own hand or act, whether sane or insane, the liability of the company hereunder shall be limited to an amount equal to the premiums which have been received, without interest."

It appears that in the fall of 1935, Paul M. Hoholik, his wife and two daughters moved to the city of Iron Mountain where Mrs. Hoholik conducted the Harding Hotel. In May, 1936, decedent signed an application for insurance and the policy was delivered June 16, 1936, effective as of July 1, 1936.

The day before the policy for insurance was delivered, Mrs. Hoholik filed a bill of complaint against her husband praying for a divorce, and among other things alleged that for 11 years her husband had been an habitual drunkard, while in the application for insurance it is stated:

"(a) To what extent do you use beer, wine, or other alcoholic beverages? Yes, occasional glass of beer.

"(b) Have you ever used any of them to excess? If so, when and for how long? No."

On June 26, 1936, decedent left Iron Mountain and went to the city of Minneapolis where he stayed at the home of his brother, John Hoholik. On the evening of July 2, Michael Urban, a brother-in-law of deceased, took Paul Hoholik to a show. After the

show they returned to the home of John Hoholik and on the way home decedent told his brother-in-law, "I love my wife and children, but I haven't any home. I have no place to go." The parties arrived at John's home about 10 p. m., and shortly after 11 p. m., deceased went to bed. The next morning his bed was found empty and on July 3d, about 2 p. m., four boys swimming in Lake Calhoun found the body of Paul M. Hoholik partially submerged in about six feet of water at a point about 50 feet from the shore. The body was fully clothed and decedent's hat and glasses were still on. Upon examination it was discovered that there were no marks or bruises on the body. The coroner stated that *rigor mortis* had set in and that the man had been dead 12 or 14 hours.

Lake Calhoun is about 10 blocks from John Hoholik's home. The lake is about a mile across. At one place on the lake there is a bathing beach and a red cross life saving station. It was at the bathing beach that deceased's body was found. There is no tide or current in the lake and the beach slopes off gradually. The deceased was familiar with the particular beach as he had been there before. Extending out into the lake is a roped area for the protection of nonswimmers. Deceased's body was found about 5 feet beyond the roped area and some 35 to 50 feet south of it. About 150 feet north of the roped area was the red cross dock where the life saving launch was kept. The nearest bridge is 80 rods from the bathing beach.

Plaintiff, as beneficiary in the mentioned policy, brought suit for $3,000, claiming $2,000 on the face of the policy and *$1,000* under the indemnity provision of the policy. Defendant company defended the suit on the ground that decedent committed suicide; and on the further ground that the insured in his

application for the policy of insurance made a false representation in stating that he was not addicted to the use of intoxicating liquors to excess, when in fact he was so addicted, which representation materially affected the acceptance of the risk as well as the hazard assumed by the insurer, thereby voiding the policy; and that there was no waiver by defendant company of the defense that the application contained false representations.

The cause came on for trial and at the conclusion of plaintiff's case and at the close of all testimony, defendant company made a motion for a directed verdict for the reasons above given. The motions were denied; the cause submitted to a jury resulting in a verdict of $2,200.

Defendant company appeals. Plaintiff contends that there is ample evidence to support the finding of the jury that decedent did not commit suicide; that defendant should have been limited to the defense of suicide because of its statement of its position before suit was brought; and that the application was not attached to the policy.

It is unnecessary to cite authority to show that the burden of proof is upon defendant to prove that deceased committed suicide. The burden is also upon plaintiff to show that decedent's death was accidental in order to recover for the accidental death benefit. As we view the verdict, the jury concluded that defendant did not sustain its theory of suicide or that plaintiff did not sustain her theory of accidental death.

In our opinion there is competent evidence to support the finding of the jury that defendant failed to sustain the burden of proof of showing that decedent committed suicide. The presumption is that decedent did not commit suicide. There was some testimony that the divorce proceedings had been discontinued;

that deceased was planning on returning to his home in Iron Mountain; that his parting from his wife and family had been friendly; that on the evening before his death he was in a cheerful mood; and that upon returning to his brother's home, he had gone to sleep.

It is next contended by defendant that plaintiff is barred from recovery because of false representations contained in the application for insurance, while plaintiff contends that this defense is not available to the defendant as such defense was waived by the following letter:

"June 29, 1937.

"In Re: Policy 0677246–SC,
"Paul M. Hoholik, Deceased.
"Ray Derham, Esquire,
"Lawyer,
"Iron Mountain, Michigan.
"Dear Sir:

"Replying to your letter of June 12th.

"We investigated the circumstances surrounding the death of the insured under this policy, and we are firmly of the opinion that he committed suicide.

"We have offered, in accordance with the terms of the contract, to return the premiums paid. Our manager offered our check for $9.30 to the claimant, but she refused to accept it. We are holding it subject to demand. There is no limitation in which to bring suit—of course, in the event of litigation, we reserve to ourselves the right to interpose any and all proper defenses.

"Yours truly,
"JOHN B. NORTHRUP,
"Manager of Claim Division."

The record shows that when the cause was being tried defendant introduced testimony which tended to show the falsity of the answers contained in decedent's application for insurance. No objection was

offered to this testimony. The trial court was not asked to rule upon the admissibility of this testimony. It is now too late to raise this objection; moreover, the letter of the insurance company reserved the right to interpose any and all proper defenses.

The claim is made by plaintiff that at the time of delivery of the policy the application for insurance was not attached thereto. During the trial of the cause there was positive testimony produced by defendant that at the time of delivery of the policy to decedent, the application was attached to the policy, but when the policy was introduced in evidence the application was missing. It also appears that plaintiff produced some positive testimony that the application was not attached to the policy when delivered.

On this question the trial court instructed the jury as follows:

"If you find from the evidence that the application was not attached to the policy when delivered to Paul Hoholik that (then) these questions of misrepresentation in the application are not before you, because the law requires that the application must be attached before the defendant can rely upon any misstatements in it.

"Now it being presumed as a matter of law that a copy of the application was attached to the policy, the burden is on the plaintiff here to prove that it was not attached by a preponderance of the evidence. Now by a preponderance of the evidence we mean the weight, the sufficiency, the convincingness of the evidence. We mean evidence which outweighs that brought against it. We mean the greater weight of the evidence."

In our opinion the above instruction was correct. Whether the application was attached to the policy when delivered was a question for the determination of the jury.

Defendant also contends that the trial court was in error in giving the following instruction to the jury:

"Now then, in that case were these answers intended to deceive the insurance company and did they amount to a fraud upon it? Now any false representation intended to deceive which misleads another to his injury amounts to a fraud, which voids a contract made in reliance upon it. Then there are other elements. Did they materially affect the acceptance of this risk or the hazard assumed by it? You have to pass upon that testimony in the case and to remember all of the testimony so if you find that they were false, also consider whether or not they affected the risk. If you find they did not affect the risk, then you will pass on the further questions which I shall submit to you. If you find that they did affect the risk, then I will tell you later how to dispose of that question."

The trial court also gave the following instruction:

"Now the defendant here denies the right of the plaintiff to recover anything in this case for two reasons. One, that the application contained the questions and answers which I have just read to you and that those answers were false and calculated to deceive the insurance company, and did affect the risk, the acceptance of the risk, and the hazard assumed by the company, and that as a matter of fact the insured was addicted to the use of intoxicating liquors at that time, and that being a part, and those representations, I mean, being a part of the contract between the parties and being untrue, as the defendant claims, the plaintiff is not entitled to recover for that reason, so contends the defendant. I charge you that as a matter of law that misrepresentations, if they were made as to the use of intoxicating liquors, were material and voided the policy, if false.

''The defendant on that issue may rest upon the legal assumption that since the law required that a copy of the application should be attached to the policy that in fact it was attached. Now the plaintiff asserts that it was not attached and therefore was not a part of the contract, and so there is the first question for your consideration.  *  *  *

''Now then the burden was on the plaintiff to prove that that application, or a copy of it, was not attached to the policy. Now if you find as a matter of fact that it was not attached, then it was not a part of the contract, and you will pay no further attention to that question. But, if you find that it was attached, then you will have to move along to the next question with relation to this application and what was in it, and that is, was the deceased, when he made the application, addicted to the excessive use of intoxicating liquors? Now when you get to that question the burden shifts to the defendant, because the defendant asserts it and the plaintiff denies it, and the defendant asserting it the burden is on the defendant to prove that, so the burden is on the defendant to prove that Paul Hoholik when he made that application was addicted to the excessive use of intoxicating liquors. Now if you find, after weighing this question, that he was not, then you needn't consider the question any further. But if you find that he was addicted to the use of intoxicating liquors, excessive use of intoxicating liquors, I mean, then you know, as a matter of fact, what his answers were to the questions which I have read to you which were in his application.''

Under the foregoing instructions, the duty of the jury was clear, namely, if the application was attached to the policy and decedent used intoxicating liquors to excess, such misrepresentations were material and voided the policy.

We must assume that the jury obeyed the instructions of the court and returned a verdict in accord-

ance therewith. Under such an assumption we must assume that the jury found that the application was not attached to the policy and the trial court was correct in refusing to give the following requested instructions of defendant:

"I charge you that plaintiff is not entitled to recover on either claim for the reason that in the application for insurance a question was asked of the deceased:

" 'To what extent do you use beer, wine or other alcoholic beverages?' and the deceased answered:

" 'Yes, occasional glass of beer.'

"And another question was asked in the application:

" 'Have you ever used any of them to excess, if so when and for how long?' and the deceased answered:

" 'No.'

"I charge you that such a false answer to these questions materially affected the acceptance of the risk and materially affected the hazard assumed by the defendant, and, under the undisputed evidence in this case deceased's answers to those questions were not true, but were false. Therefore, plaintiff is not entitled to recover anything in her suit.

"If the court refuses to give the two last foregoing instructions, then the court is respectfully requested to instruct as follows (7):

7

"I charge you that if you find by the greater weight of the evidence that the deceased's answers to the questions:

" 'To what extent do you use beer, wine or other alcoholic beverages?' and the deceased answered:

" 'Yes, occasional glass of beer.'

" 'Have you ever used any of them to excess, if so when and for how long?'

" 'No.'

were not true, but were false, your verdict must be no cause for action in favor of the defendant and against the plaintiff.''

These requested instructions assumed as a fact that the application was attached to the policy when delivered. As we have already said, it was within the province of the jury to decide whether the application was attached to the policy. On the question of instructions given in the instant case, we think it timely to restate what we said in *Schneider* v. *C. H. Little Co.,* 200 Mich. 361:

"The instruction of the court should be considered as a whole, and not by isolated portions. This doctrine has frequently been referred to, and it is hardly necessary to cite cases. * * *

"Viewing the entire case upon this record, we are of opinion that it cannot be said that the trial resulted in a miscarriage of justice, and we find no reversible error in the record, and the judgment of the lower court is therefore affirmed."

We find no reversible error and the judgment of the lower court is affirmed. Plaintiff may recover costs.

Butzel, C. J., and Wiest, Bushnell, Potter, Chandler, North, and McAllister, JJ., concurred.