T. Mac Downing, Guardian of Virginia Lee Zimmerli, Appellee, v. Metropolitan Life Insurance Company, Appellant.

Gen. No. 9,248.

Heard in this court at the October term, 1940. Opinion filed November 3, 1941. Rehearing denied May 5, 1942.

MILLER, WESTERVELT, JOHNSON & GUENTHER, of Peoria, and LEONARD C. BERRY, of Macomb, for appellant; EUGENE R. JOHNSON, of Peoria, of counsel.

ROSWELL B. O'HARRA, of Macomb, for appellee.

MR. PRESIDING JUSTICE HAYES delivered the opinion of the court.

T. Mac Downing, guardian of Virginia Lee Zimmerli, a minor, brought suit on behalf of his ward in the circuit court of McDonough county, against the Metropolitan Life Insurance Company, to recover the sum of two thousand ($2,000) dollars upon a policy of life insurance issued by defendant on the life of his ward's father, in which his ward was designated beneficiary. The face amount of the policy was one thousand dollars ($1,000) for which amount the defendant admits liability. Defendant tendered this amount prior to trial, and the tender was accepted. The plaintiff claims an additional one thousand dollars by virtue of an "Accidental Death Benefit" rider to the policy, which,

in substance, provided for payment to the beneficiary of an additional one thousand dollars; if the insured's death was caused "as the result directly and independently of all other causes, of bodily injuries, sustained through external, violent and accidental means, . . . " if the insured's death "shall not have been the result of self-destruction, while sane or insane, . . ."

Defendant answered by denying plaintiff's allegations of accidental death claiming that the insured's death was suicide. The case was tried before the court without a jury, who rendered judgment against the defendant for the additional accidental death benefit of one thousand ($1,000) dollars with interest and costs. Defendants have appealed to this court.

Maurice Zimmerli, the insured, a young man thirty-one years old, was found dead in a ditch along a country road near Macomb, Illinois, on September 11, 1937. Examination of his body disclosed a bullet wound about the size of a half dollar in the left breast. His shotgun was found resting upright on the inside of a barbed wire fence, running parallel to the ditch and above it on the level ground bordering a timber. The butt of the gun rested on the ground at about a forty-five degree angle to the fence. The barrel leaned against the barbed wire. There was a small bush close to the gun, and one of its branches extended toward the trigger. Plaintiff contends that insured's gun was accidentally discharged, while he was climbing over the fence. Defendant claims that insured intentionally discharged the gun himself and thus committed suicide.

To prevail in this case, plaintiff had the burden of proving that the death of the insured was sustained by external, violent, and accidental means and was not the result of suicide. *Rogers v. Prudential Ins. Co.,* 270 Ill. App. 515. The proof in this case establishes beyond question that the cause of insured's death was

violent and external, and defendants do not dispute this. The only issue is whether plaintiff has sustained his burden of establishing that the cause of death was accidental, and not the result of suicide. It should be noted at the outset that in sustaining this burden, plaintiff is fortified by the presumptions against suicide, and that death under circumstances similar to those just described, is ordinarily accidental. *Anderson v. Inter-State Men's Accident Ass'n of Des Moines, Iowa,* 354 Ill. 538. In the absence of proof to the contrary, these presumptions are sufficient to sustain a recovery for accidental death. *Wilkinson v. Aetna Life Ins. Co.,* 240 Ill. 205. In this case, however, defendants introduced evidence that insured had been divorced by his wife; that he had been keeping company with a young woman who finally discouraged his attentions, and that he had told her on several occasions that if she terminated their courtship, he would commit suicide. Plaintiffs, on the other hand, introduced evidence that insured was a quiet but cheerful young man; that he had not been despondent nor had he threatened to commit suicide in the presence of his family; that he hunted frequently and finally that he had informed his mother the morning of his death that he was going hunting.

Under these circumstances, we believe that an issue was raised to be decided by the trier of facts, in this case the judge without a jury. Inasmuch as his decision is clearly not against the weight of evidence, it must be sustained. *City of Quincy v. Kemper,* 304 Ill. 303.

Defendant contends that this case must be reversed because the trial court admitted evidence of certain tests tending to show that insured could not have fired the gun himself. It must be emphasized that evidence of tests or experiments should be viewed with caution by the trial judge and admitted only where it is certain that they were conducted under circumstances very

similar to those connected with the act to be illustrated thereby. It appears from the record here that a deputy sheriff and certain other officers visited the spot where the insured's body was found the day after his death and again about a month later. On one of these occasions a representative of the defendant accompanied them. Some of these officers had been present, shortly after the body was found, and observed the physical location of the body and the gun leaning against the fence. On their return for their experiment they placed the gun in the exact spot that it was found, the barrel leaning against the fence, the butt in a depression,—apparently caused by its recoil,—which depression the defendant admits existed. Some of these men then attempted to lean over the fence and reach the trigger of the gun and all of them testified that it was impossible to do so. Testimony was introduced showing that the men who made the tests were all larger than the insured and had longer arms than he had. From this, plaintiff contends that inasmuch as these men were unable to fire the gun, the insured, a smaller man with shorter reach, was likewise unable to do so.

We have carefully examined the numerous cases cited by both plaintiffs and defendants on this question. Each one announces the rule stated above and applies it to varying fact situations. In a particular case, however, a trial judge in the first instance, and an Appellate Court on review, must determine whether in the case before it, the conditions under which the tests were made are so similar in all essential particulars to those originally existing that the results thereof will have probative force. Thus in *Hauser v. People,* 210 Ill. 253, the circuit court of Grundy county admitted testimony of tests made by various people as to the view which could be had of persons at and in a particular doorway, in order to support the identification of a defendant by another witness who had seen him in that doorway. The Supreme Court in approv-

ing the ruling of the trial court said: "Such evidence is competent if the conditions at the time testified to by the witnesses were the same as when the burglars entered the engine room, or so nearly the same as that the testimony would be fairly applicable to the issue." We believe that the conditions under which the tests were made, in this case, were sufficiently similar to those existing at the time insured was shot, and that therefore this evidence was properly admitted.

Defendant also contends that the trial court committed reversible error by admitting the depositions of two witnesses who also testified at the trial. Defendant, prior to the trial, took the depositions of the insured's employer and his mother. During the trial, both of these people were called and testified for plaintiff. Defendant read from the deposition of insured's mother, while cross-examining her, in order to impeach her testimony, but did not introduce her deposition or that of insured's employer in evidence. The plaintiff then offered both depositions in rebuttal over defendant's objection. Defendant cites text authorities to the effect that it is improper to admit the deposition of a person who is present in the courtroom and available as a witness. Plaintiff, on the other hand, cites numerous Illinois cases holding that a deposition taken at the instance of one party to a law suit, but not introduced in evidence by that party, may be introduced by his opponent. In none of these cases, however, did the deponent testify at the trial. Plaintiff also cites *Frink v. Potter,* 17 Ill. 406, and *Bradley v. Geiselman,* 17 Ill. 571. In the former case, a deposition was taken by plaintiff and offered in evidence at the trial. Defendants produced the deponent in open court and objected to the admission of his deposition. The court held that the deposition was properly admitted, and that defendants could have called the witness as their own witness at the trial and examined him had they so desired. A similar result was reached in the *Bradley* case. None

of these authorities however, cover the exact situation in the case at bar, but we do not deem it necessary to pass upon this issue. We have carefully compared the testimony of both witnesses on the stand with that given in their depositions and find no material discrepancies. We, therefore, do not believe that defendant was injured by the introduction of these depositions or that the trial court committed reversible error, if error it was, by so admitting them.

The judgment of the circuit court of McDonough county is therefore affirmed.

*Judgment affirmed.*