415 P.2d 305

**Jerry M. HAMAN, Plaintiff-Respondent,**

v.

**The PRUDENTIAL INSURANCE CO., OF AMERICA, A Corporation, Defendant-Appellant.**

**No. 9653.**

Supreme Court of Idaho.

June 10, 1966.

the support and education of the children in such proportions as the court deems just."

Elam, Burke, Jeppesen & Evans, Boise, for appellant.

Rayborn, Rayborn & Rayborn, Twin Falls, for respondent.

McFADDEN, Chief Justice.

This appeal presents for review the issue as to the propriety of instructing a jury on the presumption against suicide, and arises from a judgment for the plaintiff in the amount of $6,000.00 based upon a life insurance policy with additional accidental death benefits, issued by the defendant, The Prudential Insurance Company of America, upon the life of plaintiff's deceased wife.

The policy involved was issued May 1, 1963, to Evelyn M. Haman, the wife of the plaintiff, who died as the result of a gunshot wound in the head on December 30, 1963. This policy in the face amount of $3,000.00, contained a provision for payment of an additional $3,000 in the event her death occurred as the result of an accident. The policy among other things provided:

> "If, within two years from the date of issue, the Insured dies as a result of suicide, while sane or insane, this policy shall be void and the Company's liability shall be limited to the return of the amount of the premiums paid."

Under the provisions for the accidental death benefit there is contained as an exception, the following:

"No accidental death Benefit shall be payable if the injury or death results (1) from suicide or any attempt thereat, whether the Insured is sane or insane. * * *"

Nowhere in the record does it appear that any attempt was made to distinguish between the burden of proof of the defendant company which asserted that it was not liable on the life policy by reason of the insured's suicide, and the burden of proof of the plaintiff to establish under the accidental death benefit provisions of the policy that insured's death occurred as a result of an accident.[1] The court merely advised the jury by its instructions that the burden of proof was on the plaintiff to establish by a preponderance of the evidence that the insured's death was the result of an accident.

Defendant, by appropriate assignments of error, challenges the trial court's instruction which advised the jury that the plaintiff in sustaining the burden of proof,

" * * * is entitled to the benefit of the rebuttal presumption that a person will not take his own life, as well as to the benefit of all other direct and circumstantial evidence, no matter by whom introduced, which you, as jurors weighing all of the evidence, believe contributes to plaintiff's sustaining such burden of proof."

The trial court also instructed:

"Where used herein the term 'presumption' and 'it is presumed' refer to the legal inference that a certain unknown fact is true or untrue because our knowledge of human motives and human nature, which influence human conduct lead us to accept that fact as true or untrue

until such inference is rebutted or contradicted by other evidence."

It is the contention of the defendant that under the law a presumption against suicide is a matter of procedure and merely shifts the burden of producing evidence to the defendant, and that when such evidence has been produced, the presumption no longer serves any useful purpose, and hence the jury should not be instructed as to such a presumption. Cited for this proposition are the following law review articles: Richardson and Breyfogle—Problems of Proof of Distinguishing Suicide from Accident, 56 Yale Law Journal, Feb. 1947, No. 3, p. 482; Morgan—Evidence—Presumptions—Burdens of Proof, 23 Oregon Law Review, June, 1944, No. 4, p. 269; Hartman—The Presumption against Suicide as Applied in the Trial of Insurance Cases, 19 Marquette Law Review, (1934) p. 20; White—Presumptions in Violent Death Cases, or Quo Vadis Presumptions, 15 University of Miami Law Review, 1960, No. 1, pg. 1. In addition our attention is called to the statement of Professor George Bell contained in his work, Handbook of Evidence for the Idaho Lawyer, first ed. 1957, p. 239, wherein the presumption of due care is discussed.

To fully appreciate the import of the defendant's assertion of error and argument, a brief statement of the facts is in order. Mrs. Evelyn Mae Haman, the insured, was, at about 8:30 p. m., December 30, 1963, found dead by her minor son, Freddie, in the yard to the rear of the Haman residence. Lying next to her, or across her legs, was a .22 cal. rifle. Dr. Anderson, her physician was called, and upon arrival at the Haman residence, he examined Mrs. Haman, who had been removed in the meantime from the back yard to the davenport in the home. He pronounced her dead as the result of a gunshot wound in the head. The point of entrance of the wound

---

1. See: Shepherd v. Midland Mutual Life Ins. Co., 152 Ohio St. 6, 87 N.E.2d 156, 12 A.L.R.2d 1250 (Ohio, 1949); Hoholik v. Metropolitan Life Ins. Co., 289 Mich. 242, 286 N.W. 228 (Mich.1939); Burrier v. Mutual Life Insurance Co., of New York, 63 Wash.2d 266, 387 P.2d 58, (1963); Annot. 142 A.L.R. 742; 29A Am. Jur. Insurance §§ 1852, 1855, pp. 914 and 920; Jefferson Standard Life Insurance Co. v. Clemmen, 79 F.2d 724, (4th Cir. 1935).

was the right temporal area. There was a little blood around the wound and evidence of powder burns. There was no exit wound, but he noticed a nob behind the left ear. He could not say if the nob was the bullet or a fracture of the skull.

Mr. and Mrs. Haman had been married since 1945; four children were born of the marriage, who at the time of her death ranged in age from less than one year to sixteen years. She was interested in her family, and her children's welfare. There was no discord in her marriage or family life. On the day of the tragedy, she had followed the normal routine of her daily life. In the evening she had been watching television with members of her family. About 7:40 p. m., she called a niece to arrange for her to stay with the baby the next evening, New Year's Eve, while the other members of the family went out for dinner. There was testimony that she took a roast out of the freezer for the next day's meal. While so engaged, plaintiff and Mrs. Haman heard a dog bark outside, and Mrs. Haman then inquired if there were any "bird shot" for the .22 cal. rifle to scare off the dog, and was advised there were no "bird shot" shells. Freddie, the 14 year old son, volunteered to scare the dog away, but since he had his shoes removed, Mrs. Haman said she would do it. She went to the kitchen, obtained the rifle, loaded it with a .22 cal. lead bullet her son had obtained for her, and walked outside alone.

When Mrs. Haman failed to return shortly, her son went out looking for her, and found her lying on the ground with the gun alongside her. A strange dog was there, and the boy grabbed the gun and attempted to shoot at the dog, but the gun didn't fire; he then pulled the bolt open, closed it and again attempted to shoot at the dog, but still the gun wouldn't fire, and he then threw the gun at the dog. He then went into the house and told his father about his mother. He stated that the condition of the ground and sidewalk was very slick, although at least one other witness disputed this statement.

Later the sheriff came to the Haman residence and in the course of investigating the tragedy, examined the premises. He described the entrance of the fatal wound as being in the right temple, just in the hair line in front of the ear, with very deep powder burns entirely around the wound, and a lump about the left ear. He also examined the .22 cal. rifle. He stated that in his opinion death resulted from self destruction. The county coroner, who was also a member of the Twin Falls city police department, accompanied the sheriff to the Haman residence and corroborated the testimony of the sheriff. He, too, was of the opinion that death was a result of suicide, as evidenced by the certificate of death he signed, which recited "bullet wound in head" by "suicide" as the cause of death. There was no inquest held, nor autopsy performed. (I.C. §§ 19–4301, 19–4301A, 19–4301B).

Mrs. Haman's physician testified that he had treated Mrs. Haman for nervous spells, headaches, and that he had found symptoms of ulcers. Within two years prior to her death he had prescribed tranquilizers. Within the month prior to her death she had complained of weight loss, nervousness and worrying, and the doctor prescribed vitamins, tranquilizers and sleeping pills. The record indicated that Mrs. Haman on occasion used alcohol to help her sleep. The actual amount of alcohol she had used was in some question, and the record reflects that she stopped the use of alcohol about two weeks prior to her death. Even though there is some evidence of nervousness and tension, the doctor testified that her most serious illnesses were her pregnancies. The record discloses no dramatic change in her life or mental outlook, in her relationship with her family, or in the family's financial stability.

No one saw Mrs. Haman at the time the fatal shot was fired, and there was no evidence that there was any third person involved. It is thus obvious that under the circumstances death resulted from either an accidental shooting, or as a result of sui-

\cide. Of these two alternatives, the jury by its unanimous verdict in favor of the plaintiff, held that death was the result of an accidental shooting.

Presented for determination by the defendant's contentions and this record, is not only the issue of whether an instruction should have been given to the jury of the presumption against suicide, but also whether such a presumption carries any evidentiary weight in opposition to the defendant's case, consisting of testimony, circumstantial evidence, and the opinions expressed by the sheriff and the coroner. In further support of this position, the defendant points to the provisions of I.C. § 39–263:

> "Any certificate filed in accordance with the provisions of this act [Vital Statistics Act of 1949] and the regulations prescribed by the board, or any copy of such records or part thereof, duly certified by the state registrar, shall be prima facie evidence of the facts recited therein."

This provision has reference to the death certificate required to be filed; the trial court instructed the jury in the terms of this section and also instructed that:

> "In determining whether or not plaintiff has sustained the burden of proof required of him you must also consider that the defendant, which is defending on the grounds that the death was the result of suicide, is entitled to the benefit of the prima facie evidence of the coroner's death certificate, together with the benefit of all other direct or circumstantial evidence, no matter by whom introduced, which you as jurors weighing all the evidence, believe to be contrary to the plaintiff's position." [2]

This court had not previously, so far as can be determined, considered the effect of the presumption against suicide. In Towne v. Northwestern Mut. L. Ins. Co., 58 Idaho 83, 70 P.2d 364, this court considered a case on a life insurance policy, wherein the defense of suicide was interposed; therein, however, no issue was presented, or discussion had as to the presumption against suicide.

■ Related to the presumption against suicide is a presumption well recognized by case law that when a plaintiff or beneficiary has proven that death of the insured resulted exclusively from external and violent means but is unable to introduce proof to the effect that death resulted from accidental means, a presumption arises that the external violence was due to accidental means. This latter presumption in favor of death by accidental means has been recognized and applied in Mutual Life Ins. Co. of New York v. Hatten, 17 F.2d 889 (1927 CA 8th Iowa); Metropolitan Life Ins. Co. v. Graves, 201 Ark. 189, 143 S.W.2d 1102 (Ark.1940); Mutual Life Ins. Co. v. Burson, 50 Ga.App. 859, 179 S.E. 390, (1935); Aetna Life Ins. Co. v. Milward, 82 S.W. 364, 68 L.R.A. 285, 4 Ann.Cas. 1092 (Ky. 1904); Schneider v. Metropolitan L. Ins. Co., 62 Ga.App. 148, 7 S.E.2d 772 (1940); Downing v. Metropolitan Life Ins. Co., 314 Ill.App. 222, 41 N.E.2d 297, (1941); Klinginsmith v. Mutual Ben. Health & Acc. Assn., 64 S.W.2d 705, (Mo.App.1933); Lewis v. New York Life Ins. Co., 113 Mont. 151, 124 P.2d 579, (1942); Southland Life Insurance Co. v. Lloyd, 21 S.W.2d 1071 (Tex.Civ.App.1929); Tully v. Prudential Ins. Co., 234 Wis. 549, 291 N.W. 804 (1940).

In Clemmer v. Jefferson Standard Life Insurance Co., D.C., 9 F.Supp. 115, rev'd 79

---

2. As to the propriety of giving an instruction which authorizes consideration by the party of matters of opinion as distinguished from facts, see: Beardsley v. Ostrander, 118 N.W.2d 61 (Iowa, 1962); Morton v. Equitable Life Ins. Co., 218 Iowa 846, 254 N.W. 325, 96 A.L.R. 315 (1934); Seater v. Penn. Mut. Life Insurance Co. of Philadelphia, 176 Or.

542, 156 P.2d 386, (1945), which considered a statute substantially in conformity with the uniform act on Vital Statistics, framed by the National Conference of Commissioners on Uniform State Laws, I.C. § 39–241 to § 39–272, inc.; 9 C. Uniform Laws Annotated, 360, Vital Statistics, § 16.

F.2d 724, 103 A.L.R. 171 (CA 4th, Cir. 1935), the court well expressed the difficulty inherent in this type of case as follows:

"Cases of this sort have always been and will always be difficult. A human being is found dead; it is apparent that death was caused from a gunshot wound from a weapon found near by, and that this gun was fired through some act of the deceased. But the question at once arises as to whether the wound was voluntarily inflicted with the intention of self-destruction or was the result of some unfortunate and involuntary mischance in the handling of the weapon. No other person has witnessed the event; there is no direct evidence to tell us of what really happened. We can seek the answer only through evidence of all the surrounding circumstances from which inferences may properly be drawn. And from these it is rare that conclusive or entirely convincing results are obtained."

Another presumption that is analogous to the presumption against suicide is the presumption of due care. Both of these presumptions are founded on the principle that a person will maintain the ordinary instincts for self-preservation. This court has had before it numerous cases involving the presumption of due care. The instinct of self-preservation and the known disposition of man to avoid injury and harm to himself are common knowledge. Staab v. Rocky Mountain Bell Telephone Co., 23 Idaho 314, 129 P. 1078 (1913); Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651 (1950). Another rationale of this presumption is that it forces the party having superior means of access to the facts to make them known to the court. This court has limited the use of such presumption to situations where a person is killed, Fleenor v. Oregon Short Line R. R. Co., 16 Idaho 781, 102 P. 897, (1909), or unavailable as a witness because of insanity, Webb v. Gem State Oil Co., 56 Idaho 465, 55 P.2d 1302, (1936), or has suffered a loss of memory, Department of Finance v. Union Pacific

R. R. Co., 61 Idaho 484, 104 P.2d 1110 (1940); Geist v. Moore, 58 Idaho 149, 70 P.2d 403, (1937); Van v. Union Pacific Railroad Company, 83 Idaho 539, 366 P.2d 837, (1962).

This court has wavered in its conclusions as to whether such presumption should be considered if there are eye witnesses to the accident. In Packard v. O'Neil, 45 Idaho 427, 262 P. 881 (1927), it was held that when there are eye witnesses to the accident, the presumption should not arise. However, in Geist v. Moore, supra, it was held the presumption should be employed even though there were witnesses. In Larsen v. Jerome Cooperative Creamery, 76 Idaho 439, 283 P.2d 1096 (1955), it is inferred, at least, that the presumption is applicable only when there are no witnesses to the accident. In Neff v. Hysen, 72 Idaho 470, 244 P.2d 146 (1952), it was held that when there are impartial, disinterested witnesses so that the facts and circumstances surrounding the accident are available and are presented, with no substantial conflict in the witnesses' testimony, there is no need for the presumption to be employed even though one party to the accident is dead. See also: Graham v. Milsap, 77 Idaho 179, 187, 290 P.2d 744 (1955), wherein it is stated: "Instructions on presumptions of due care on the part of a decedent are not favored, and the tendency is to refrain from giving them, especially where there are eye witnesses." Lallatin v. Terry, 81 Idaho 238, 340 P.2d 112 (1959); Mundy v. Johnson, 84 Idaho 438, 373 P.2d 755 (1962); Drury v. Palmer, 84 Idaho 558, 375 P.2d 125 (1962); Dewey v. Keller, 86 Idaho 506, 388 P.2d 988 (1964).

As to the evidentiary and procedural effect of such presumption this court has held the presumption of due care creates a *prima facie* case of due care upon the part of the person killed. Adams v. Bunker Hill, etc. Mining Co., 12 Idaho 637, 89 P. 624 (1906); Hooton v. City of Burley, supra. In Madron v. McCoy, 63 Idaho 703, 126 P.2d 566 (1942), it was held that if insufficient evidence is presented by the party

against whom the presumption operates, the presumption will entitle the party relying on it to judgment. In Brown v. Graham, 62 Idaho 388, 112 P.2d 485 (1941), this court considered the other side of the evidentiary value to be attributed to such presumption and by a divided opinion held that clear, convincing and uncontradicted evidence in opposition to the presumption will prevail as a matter of law over the presumption, and that it was incorrect to instruct the jury, that in order to overcome the presumption the evidence must be clear, convincing and uncontradicted. In Department of Finance v. Union Pacific R. R. Co., 61 Idaho 484, 104 P.2d 1110 (1940), it was held that if reasonable minds might differ as to the conclusions to be drawn from the evidence opposing the presumption, the matter should be submitted to the jury, and the jury informed as to the presumption, quoting from Geist v. Moore, supra, as follows:

> " * * * and in the following cases this court had definitely committed itself to the doctrine that where there is a conflict between the presumption and contrary evidence, from which reasonable minds might draw different conclusions, it is proper to instruct the jury as to the presumptions. (citing cases.)"

■ In the previous discussion of the application of the presumption of due care this court has given some guidelines that are of assistance in arriving at a proper evaluation of the presumption in this case. In Adams v. Bunker Hill Mining Co., supra, it was held that the presumption of due care is sufficient to make out a prima facie case in the face of a contention of contributory negligence and that it was error for the trial court to have granted a nonsuit. In Madron v. McCoy, supra, it was held in effect that if insufficient evidence is presented in opposition to the presumption such presumption is sufficient to sustain a judgment. In Brown v. Graham, supra, it was held that clear, convincing and uncontradicted evidence in opposition to the presumption prevails over it as a matter of law, and inferentially held that if less than clear, convincing and uncontradicted evidence in opposition is submitted, then an issue of fact is presented for resolution by the jury. This inferential view of Brown v. Graham, supra, was in line with the holdings in the case of Department of Finance v. Union Pacific R. R. Co., supra, and Geist v. Moore, supra, which held that if there is a conflict between the presumption and contrary evidence, from which reasonable minds might draw different conclusions, the issue is one for resolution by the jury.

While the view that a presumption is to be afforded some evidentiary weight in the scales of justice, and is to be considered as more than a procedural device of shifting the "burden of persuasion", has been criticized by authors,[3] yet there is very respectable authority to sustain this view, as set out in the annotations cited in the footnote below.[4]

Perhaps one of the best statements of the principles involved is to be found in Burrier v. Mutual Life Insurance Co., of New York, 63 Wash.2d 266, 387 P.2d 58; 65, 66, (1963):

> " * * * Although, perhaps, it can be correctly said that, in a majority of the states, the presumption against suicide does not go to the jury, we can point to a host of cases in which instructions de-

---

3. Richardson and Breyfogle—Problems of Proof in Distinguishing Suicide from Accident, 56 Yale Law Journal, 482; Morgan — Evidence — Presumptions — Burden of Proof, 23 Oregon Law Review, 269; Hartman—The Presumption against Suicide as Applied in the Trial of Insurance Cases, 19 Marquette Law Review, 20; White—Presumption in Violent Death Cases or Quo Vadis Presumptions, 15 University of Miami Law Review, 1.

4. Annot. Presumption against suicide as evidence, 103 A.L.R. 185; 158 A.L.R. 747; Annot: Insurance—Death by Accidental Means, 12 A.L.R.2d 1264, at pp. 1289, 1302, 1315, 1328; Annot: Effect of Presumption as Evidence or Upon Burden of Proof, where controverting Evidence is Introduced, 5 A.L.R.3rd 19–63.

claring the presumption are either set forth in the charge to the jury, or which hold that the instruction should have been so given. (Citing cases).

That there is a swing back to incorporating the presumption against suicide in the jury instructions of life insurance cases, is acknowledged in the comment to Rule 14, Uniform Rules of Evidence.[1]

"1. 'On the other hand, there is a strong argument for the view that the jury needs guidance in this situation if they are to give due effect to the probabilities and frequently the substantive policy on which the presumption is based. Before the Thayer discovery came into vogue, the practice of instructing on the effect of presumptions was the established tradition. Wigmore, who accepted and popularized the Thayer view, nevertheless acknowledged in the last edition of his treatise, the need for advising the jury that they should give special weight in the course of experience as embodied in the presumption. 9 Wigmore, Ev. 2498a, pp. 340, 341, Par. 21, 22 (3d ed. 1940). * * * '"

■ We are constrained to the view that there was no error committed by the trial court in giving the instruction to the jury. The presumption carries with it some evidentiary weight, at least sufficient to avoid the granting of a motion for involuntary dismissal at the close of a plaintiff's case. In Ineas v. Union Pac. R. Co., 72 Idaho 390, 405, 241 P.2d 1178, (1952) it is stated: "* * * if there is positive evidence which conclusively contradicts the presumption of due care and caution which applies to a person killed, and by thus showing the person has not exercised such due care and caution, it not only overcomes the presumption, but prevents recovery by the deceased's representatives." In Larsen v. Jerome Cooperative Creamery, 76 Idaho 439, 283 P.2d 1096, (1955), it was held that the presumption of due care is given the effect of prima facie evidence unless satisfactorily rebutted or a fact contrary to the presumption is proven. In Graham v. Milsap, 77 Idaho 179, 187, 290 P.2d 744 (1955) the court stated: "All that is necessary is that the presumption be overcome by a pre-

ponderance of the evidence in a negligence action. Calkins v. Blackwell Lumber Co., 23 Idaho 128, 129 P. 435 (1912). Whether this has been done or not is a question for the jury to decide."

■ The problem presented by the presumption against self destruction is further compounded in the instant case by reason of the instruction that the plaintiff had the burden of proving that the decedent's death was accidental. Under the law in Idaho, a plaintiff who has the burden of proof in order to avoid the granting of a motion for dismissal at the close of his evidence, or a directed verdict at close of all evidence must have presented a *prima facie* case. To instruct the jury that a party has the burden of proving a fact is to direct the jury to find the nonexistence of that fact if the mind of the individual juror is in equilibrium; if, however, unless he is convinced that the fact's existence is more probable than its nonexistence, then the party having the affirmative has sustained the burden. When, as here, the plaintiff, who has the burden of proof of the fact of accidental death, is also entitled to rely upon the presumption against suicide, an issue of fact is presented for resolution by the jury. The determination of the jury will not be disturbed on appeal, at least when the evidence submitted in contravention to the presumption is not so clear, convincing and uncontradicted, or so overwhelming that this court must say that as as a matter of law reasonable minds could only reach the conclusion that death was the result of suicide.

Examination of the record fails to convince that the evidence presented by defendant is so clear, convincing and uncontradicted, that this court could say that reasonable minds could only reach the conclusion that decedent's death was the result of suicide.

Appellant has made other assignments of error pertaining to other aspects of this case. The assignments of error not encompassed by the principal issue discussed herein have been carefully examined. It is

concluded that these remaining assignments of error do not present issues of such prejudicial nature that they could be determinative of the appeal in any event.

 Respondent having served and filed a motion for allowance of attorneys' fee on this appeal, pursuant to I.C. § 41-1839 (See: Molstead v. Reliance National Life Insurance Company, 83 Idaho 458, 364 P.2d 883 (1961)), and good cause appearing for granting of said motion, it is ordered that the motion be granted and the sum of $750.00 be added to the judgment against defendant.

The judgment is affirmed. Costs to respondent.

McQUADE, TAYLOR, SMITH and SPEAR, JJ., concur.