MOTT v. SOVEREIGN CAMP WOODMEN OF THE WORLD.

Opinion delivered October 16, 1922.

1. INSURANCE—BURDEN OF PROVING SUICIDE.—In a suit on a policy of life insurance where there was no liability in case of suicide, the insurer has the burden of proving that insured committed suicide.

2. INSURANCE—SUICIDE—EVIDENCE.—In a suit on a life insurance policy circumstantial evidence *held* to warrant a directed verdict for defendant on defense of suicide.

Appeal from Yell Circuit Court, Dardanelle District; *A. B. Priddy*, Judge; affirmed.

*R. A. Sandlin* and *Wilson & Chambers*, for appellant.

The court erred in directing a verdict for the appellee. 89 Ark. 368; 100 *Id.* 71; 104 *Id.* 267; 105 *Id.* 526; 107 *Id.* 158; 145 Ark. 408.

The burden of proof was on appellee to establish suicide. 133 Ark. 176. Before it was entitled to an instructed verdict it would have to establish to a reasonable certainty that deceased could not have met his death by accident or the act of a third party. Bacon's Life & Acc. Ins. (4th ed.) sec. 438; 230 S. W. 369. Appellee's proof is entirely circumstantial. There is a presumption against suicide. 80 Ark. 190; 19 A. & E. Enc. Law 77; 127 U. S. 661; 73 Fed. 444.

The case at bar is stronger from the facts and circumstances that the deceased did not commit suicide than any of the following: 221 S. W. (Ark.) 858; 128 Ark. 155; 213 S. W. 45; 215 S. W. 265; 201 S. W. 1128; 232 S. W. 708.

*T. E. Helm*, for appellee.

The cases relied on by appellant may be differentiated from the present one on the facts.

There was only one reasonable conclusion to be drawn from the evidence in this case and that was that deceased committed suicide, and it was the duty of the court to direct a verdict for appellee. 19 A. & E. Enc. Law. 77; 25 Cyc. 951; 4 Cooley's Briefs on Law of Ins. 3264; see also sec. 3269; 204 Pac. 523.

The undisputed facts establishing a case of suicide here, it would have been error to submit the case to a jury.  95 Ark. 456.

Smith, J.  Appellant sued to recover as beneficiary in a policy of insurance on the life of her son, W. R. Mott. The policy contained a provision that there should be no liability if the insured committed suicide, whether sane or insane, and the insurance company defended on the ground that the insured committed suicide.  There was a directed verdict in favor of the insurance company, from which is this appeal.

The insurance company assumed the burden, which the law imposed on it, of showing that the insured died by his own hand.  The insured's throat was cut, and this was the cause of his death.  No one actually saw the wound inflicted, but the insurance company claims that the facts and circumstances are such that no other inference can fairly and reasonably be drawn than that the insured committed suicide, and it contends therefore that the verdict was properly directed in its favor.

The facts are as follows: Mott, the insured, was twenty-two years old, and enlisted in the regular army and was assigned to the Ninth Recruit Company at Fort Logan, Colorado.  He became ill and was sent to the army hospital.  The physician who had his case in charge testified that Mott had a temperature of 102, and was laboring under the insane delusion of having committed several robberies.  One of the crimes which he thought he had committed was that of bank robbery with the assistance of his brother.  He thought his brother assisted him in the commission of the crime and had refused to divide the spoils, and was threatening to turn him over to the civil authorities.  The physician further testified that Mott bought, on the day of his death, a safety razor from a fellow soldier.  Witness was notified about 4:10 in the afternoon of July 4th that Mott had killed himself.  He reported to the hospital at once, and found the body of Mott on a bed in the medical ward, covered by a sheet.  On examination he found an in-

cision through all the tissues of the lower portion of the neck, including the trachea, and the carotid artery was found severed. The incision was about five inches long. Witness arrived about 4:20 and found deceased had been dead about ten minutes. He stated that, from the evidences before him, it was very clear that the patient had killed himself by the use of a safety-razor blade. He stated the temperature of the patient was not sufficient to produce delirium. With the accompanying symptoms which he had, and from the untruthfulness of the patient's statements as to his acts, witness was of opinion that the patient had become insane.

A Miss Fox, who was a trained nurse in the surgical ward, testified that she was on duty at the time Mott killed himself. She was not regularly in charge of the medical ward, but on the day in question was giving that ward attention, as the nurse in charge was not feeling well. She testified that a few minutes after four she entered the end of the ward in which Mott was confined. This was a large ward and had, perhaps, twenty beds in it. Mott's bed was about three or four beds from the end at which she entered the ward, and he was lying on his bed as she walked through the ward, and was the only patient in the ward. Witness walked on out of the door at the far end of the ward on to a porch. About the time she reached this porch or very shortly afterwards she heard a noise which was probably occasioned by Mott falling out of bed. She listened, and presently heard a peculiar noise like some one breathing hard. She then rushed back into the hospital and found Mott lying on his stomach in a pool of blood. She was accompanied back into the ward by the nurse in charge thereof, and who had been standing out on the porch where witness was when she heard the sounds within which attracted her attention. This nurse reached the body a few seconds after witness did, and they put him in his bed, and noticed a deep cut across his throat, from which blood was flowing freely. The patient died in three or four minutes after she reached his body. When she first found the

patient, he was lying in a pool of blood, and in this pool was a safety-razor blade. She stated that only a very short interval elapsed between the time she saw the patient lying on his bed as she walked through the ward and her return to it.

In rebuttal testimony was offered to the effect that Mott had long desired to enlist in the army, and was satisfied with his condition there; and an ex-service man testified that army regulations required enlisted men to shave regularly; and a local physician testified that it would be difficult for one to sever the trachea and the carotid artery with a safety-razor blade, as considerable pressure would be required, but he admitted it could be done in that manner.

Appellant insists that the case should have gone to the jury to determine whether Mott died by his own hand. The first suggestion is that he may have killed himself accidentally in an effort to shave. But there is nothing in the testimony to support this theory. He had no soap or towels or water, and it was very highly improbable, if not, indeed, physically impossible, for Mott to have inflicted such a wound as the one which killed him in a mere attempt to shave.

The second suggestion is that Mott may have been murdered, but this theory seems equally improbable. Both the physician and the nurse described the case as one of suicide. Neither motive for any one to kill Mott nor opportunity to do so existed. There was no evidence of a struggle about the bed, except that Mott had fallen off of it, and there was no one in the ward who could have committed the crime, certainly not without the connivance of the nurse, and the theory of her connection with it is not suggested by appellant. Mott had only a small sum of money, and that was returned to his mother after his death.

Under the circumstances stated a case was not made for a jury, as the only reasonable inference to be drawn from the testimony is that he killed himself; and, this being true, there was no liability under the policy sued on.

Judgment affirmed.

HUMPHREYS, J., (dissenting).  The love of life is so great that the law strongly presumes against death by suicide.  Even when death is self-inflicted, the law will presume it was accidental until the contrary is made to appear.  *Grand Lodge A. O. U. W.* v. *Bannister,* 80 Ark. 890; *Industrial Mutual Indemnity Co.* v. *Watt,* 95 Ark. 459; *Columbian Woodmen* v. *Matlock,* 144 Ark. 126.  In the instant case, therefore, the burden was upon appellee to overcome the legal presumption against death by suicide, with proof sufficiently strong to exclude every reasonable conclusion, except that the death occurred by suicide.  The nature of the wound was sufficient within itself to create a reasonable doubt as to the manner in which the insured met his death.  It was five inches in length, and, at places, two and one-half inches deep. The hard, gristly parts of the throat were cut.  The appellee would have the court draw the inference that such a wound was necessarily inflicted by the insured with a safety razor blade only an inch and a half long. The physician who examined the deceased testified that it would have been hard for him to have inflicted the wound upon himself with such an instrument.  In order to have held the blade firmly, the insured would have taken up half its length in the grasp.  In that event, only three-quarters of an inch would have been exposed.  As said by the physician, it would have been hard indeed to have inflicted such a wound with an instrument so short and thin.  Again, the insured was lying on his stomach on the floor when found, having fallen off the bed after inflicting the wound upon himself, according to the surmise of the nurse.  Had he inflicted the wound and fallen off the bed, it is passing strange that blood was not on the bed and all over the floor, instead of being in a pool near the body.  No attendant was in the room when the tragedy occurred.  The insured was lying, when last seen, on a bed near a door.  Any one so inclined could have entered the door, killed the insured, and escaped before the nurse reappeared on the scene. The nature of the wound, position of the body, and pool

of blood might well tend to prove that the insured met his death by foul play. At least, these circumstances are not inconsistent with such a theory, and are rather inconsistent with the theory of suicide. It seems to me the rule has been reversed in making the application to the facts in this case. A presumption has been indulged in favor of suicide, instead of against it. Under the facts and circumstances, the manner of death was clearly a question for the jury to determine. For the reason stated, I am impelled to register my dissent.