### 23360. PILOT LIFE INSURANCE COMPANY v. WISE.

JENKINS, P. J. 1. There being no conflict in the evidence as to the physical facts connected with the death of the insured, and these facts, with all reasonable deductions and inferences therefrom, when taken in connection with his expressed purpose and intent to commit suicide, overcoming the presumption of law that he did not kill himself, or that his death was accidental, and demanding a finding that he came to his death by his own hand and intentionally, and the life-insurance contract sued upon containing the special provision that it should be void in the event of the death of the insured by his own intentional act, sane or insane, within two years from the date of its issue, and it affirmatively appearing that the contract was issued within two years of his death, a verdict was demanded for the defendant. *N. Y. Life Ins. Co.* v. *King,* 28 *Ga. App.* 607 (112 S. E. 383). See also *Gem City Life Ins. Co.* v. *Stripling,* 176 *Ga.* 288 (168 S. E. 20).

2. In the instant case the facts and circumstances surrounding the death, independent of the expressed intent to commit suicide, most strongly indicate, in and of themselves, that the deceased laid his neck upon the railroad-track, holding the rail by his hand, in order that his head might be severed by the approaching train. Whether or not the testi-

mony to the effect that the deceased had been drinking a day or two prior to his death and might have been drinking at or near the time of the homicide would tend to strengthen or weaken the theory of suicide, it hardly seems possible to conceive that a person falling asleep or falling in an unconscious stupor would reach such a position that the wheels of an oncoming train would merely sever his head and crush the fingers of the hand, without any mutilation of any other portion of the body save a slight scratch as long as a finger on the shoulder. Accordingly, while the facts and circumstances attending his death, if standing alone, might not be sufficient in and of themselves to demonstrate beyond any reasonable question the nature of the homicide, these undisputed facts and circumstances, when taken together with his expressed and apparently continuing purpose and intent to commit suicide, as indicated by the letters found upon his person after the homicide, leave no reasonable room for doubt or question that the deceased caused his death by his own deliberate act. A verdict being demanded for the defendant, the court erred in denying the motion for new trial.

*Judgment reversed. Sutton, J., concurs. Stephens, J., dissents.*

DECIDED FEBRUARY 5, 1934. REHEARING DENIED FEBRUARY 21, 1934.

*Bryan, Middlebrooks & Carter, W. T. Lane & Son,* for plaintiff in error.

*Hollis Fort, Dykes & Dykes,* contra.

STEPHENS, J., dissenting. It is necessary to resort to circumstantial evidence to establish the proposition, the burden of establishing which is upon the insurance company, that the deceased committed suicide. The rule is well established, even in civil actions, that in order to establish a proposition by circumstantial evidence the facts relied upon must be of such a nature that it is the only conclusion that can reasonably be drawn therefrom; and where the facts relied upon equally sustain either of two conflicting propositions, they establish neither. See authorities collected in *Taylor* v. *State,* 44 *Ga. App.* 387, 417-418 (161 S. E. 793).

The evidence relied upon to establish the proposition that the insured committed suicide consists in certain acts, declarations, and statements of his, indicating despondence and dissatisfaction with life, and that, by inference, he intended to kill himself, and also the physical facts respecting the condition of the body when found, its relation to the track, and the inference drawn therefrom as to the suicidal character of the insured's death. An intention on the part of the insured to kill himself is found, not in any express intention by him to do so, but only in inferences from his conduct and declarations and statements made by him. An inference of such intention may not be conclusively demanded, and may have been an issuable matter for the jury. But assuming, however, that

it is conclusively established that the insured had an intention to kill himself, it does not follow that because the physical facts as respects the condition of his body and its relation to the track are consistent with the theory that he put such intention into effect, the inference is demanded that he lay down upon the railroad-track with suicidal intent.

One of the witnesses, a police officer, who observed the body and the head as they lay beside the track in the condition they were in when they were found, testified that, from the position of the body, it appeared that the deceased could have been sitting and had turned around to rest and went to sleep, that he could have have been drunk and gone to sleep, that, from the "looks" of the body, "the indication was just as strong that way as any other way." While this is merely opinion evidence of the witness, it is nevertheless the inference drawn by him, who is presumably a man of ordinary intelligence, from the physical facts. It at least indicates the inference that a man of average intelligence, as jurors are supposed to be, might draw from these facts. There is evidence that the insured had indulged in intoxicating liquors, and had done so while in the state of despondency referred to. There is evidence that an empty bottle, which belonged to him and had been in his room and had contained liquor while there, was found near his body by the side of the track. While there is an issue whether this bottle was the one which had been in his room, the evidence is sufficient to authorize the inference that it was the same bottle.

The physical facts with respect to the condition of the body and its relation to the track and the drinking of liquor by the insured, and other circumstances, are as indicative of the accidental death of the insured by being run over by a train after he had fallen on the track while asleep or in a drunken stupor, as that he consciously, either while in a state of sobriety or while under the influence of liquor, and with the intention of ending his life, placed his neck upon the rail, and, while lying there, faded into unconsciousness either from the effects of liquor or from sleep, or lay there in a conscious condition, with the intention of ending his life, and awaited the arrival of the train which ran over him and killed him.

The evidence is silent and contains no facts or circumstances which authorize a finding as to how long the insured had been upon

the track before he was killed. The evidence certainly does not demand a finding that he lay down on the track before an immediately approaching train and met his death without time for reflection, as is more likely to be the case if he was killed while conscious of his impending fate. When the natural aversion to death which is inherent in all persons, and is sometimes manifested in persons intending self-destruction, is considered, the facts relied upon as circumstances establishing the theory of the suicide of the insured, where it does not appear how long he had lain upon the track before he was killed, should not be construed as demanding a finding that he lay down upon the track with his neck upon the rail, and, while in the possession of his faculties and conscious of what he was doing, lay there a considerable time waiting for death with time to deliberate and contemplate what he was doing.

Were I a juror I would be much inclined to infer, from the evidence, that the insured committed suicide, but, as a reviewing judge passing upon the sufficiency of the evidence to authorize a jury to arrive at a contrary conclusion, I can not conclude that the evidence is insufficient to authorize the verdict which the jury found, and which is necessarily predicated upon the theory that the jury did not conclude, from the evidence, that the insured committed suicide. The evidence does not demand the inference that the insured committed suicide.

The verdict found for the plaintiff, the beneficiary under the policy, against the defendant insurance company, was authorized.

### ON MOTION FOR REHEARING.

JENKINS, P. J. The defendant in error in his motion for rehearing stresses the contention that the petition merely sets forth that the deceased died on a named date, and does not show that he met his death by being run over by the train. Apparently the chief argument and contention in the motion is that the deceased "could have been and possibly was killed and put upon the track." In the original brief of counsel representing the plaintiff in the court below, the burden of the argument seems to have been based upon the other and different theory. The following excerpts are taken from their original brief: "The physical facts exclude the idea of any deliberation on his part which could have resulted in such plan as would have been necessary for him to take his life as it was taken. On the other hand, the fact of the finding of the empty whisky

bottle at the place, which was half full when last seen by [his room-mate], the fact that recently prior thereto he was in the habit of getting drunk and becoming wholly unconscious and completely helpless when drunk, are circumstances which can lead to no other fair conclusion than that he sat down on the end of the cross-tie, drank his whisky, became unconsciously drunk, and was run over by the train and killed. The further fact that a large hole was cut in his topcoat and his other coat by something on the engine, which could not have been anything but the pilot sill or the step sill at the end of the tender, is proof that he had to be sitting up and was knocked over by one or the other and threw his head, which was cut off, and his right hand, which was cut off, under the wheels. Had he been lying on his face, as his body indicated when found, there is nothing on the engine which could have struck him in the back as he was hit." It is true that in the succeeding paragraph of the brief, counsel made slight and casual reference to the present contention, in the following statement: "Not only the circumstances as above stated explode all theories of suicide, but the facts in connection with his death show that it could have been possible that he was killed and put on the track. It could have been possible that he drank so much whisky that it killed him before the train hit him. The physical facts further strongly indicate that after drinking the whisky he was afraid to walk across the trestle, sat down, and fell asleep with the view of sobering up, and the train hit him before he awakened, hence the physical facts are sufficiently strong to authorize the jury, on many theories, to conclude that he could have come to his death in several different ways without suicidal intention, and that his death was not the result of suicide at the time and place."

The original syllabus has been very slightly augmented in the effort to make plainer the meaning of the ruling as originally stated. The theory of the plaintiff which was specifically dealt with by the syllabus was that which we understood to have been put forward as his main and controlling contention. As we see it, there is nothing in the evidence to remotely suggest the surmise that the deceased had been murdered and his body thereafter placed upon the railroad-track. On the contrary, a small amount of change was found in his pockets, and the evidence, so far as it goes, indicates that there was no previous wound upon his person.

All the evidence, including especially the written expressions of the intent to commit suicide, and the position of the body with the neck across the rail and the fingers grasping the rail, seems to establish beyond reasonable doubt or question the fact of suicide. The strength of the defendant's case lies not so much in attempting to specifically exclude any and all possible contrary surmises, as it does in definitely establishing beyond reasonable doubt or question the fact of suicide itself, with the result that any and all other theories, including that which is now urged by the movant, become necessarily excluded.

It is not an easy thing for us to feel impelled, as we have felt, to adjudicate the fact of suicide. What glimpses we obtain of this unfortunate youth indicate that he was of high purpose, right-minded, but acting under extreme stress and nervous tension.

*Rehearing denied.*