**Mrs. Alice O. BOSWELL, Appellant,**

v.

**GULF LIFE INSURANCE COMPANY, Appellee.**

**No. 15626.**

United States Court of Appeals Fifth Circuit.

Nov. 15, 1955.

Harbin M. King, Calhoun, Ga., James Maddox, Rome, Ga., for appellant.

J. Frank Kemp, Atlanta, Ga., Y. A. Henderson, Calhoun, Ga., Joseph D. Tindall, Joseph D. Tindall, Jr., Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

BROWN, Circuit Judge.

Appellant, mother of Elmer M. Boswell, sought recovery of policy benefits for his death caused by a gunshot wound which, she claimed, resulted from bodily injuries effected through external, violent and accidental means. The Insurer defended on the sole ground that its policy expressly excepted death resulting from "suicide, while sane or insane". On a jury trial, after removal from the State Court, at the conclusion of all of the evidence, the court directed a verdict for the Insurer. Testing this action we apply the Georgia law. Erie

R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524; Martin v. Metropolitan Life Ins. Co., 5 Cir., 192 F.2d 167; New York Life Ins. Co. v. White, 5 Cir., 190 F.2d 424.

Elmer Boswell, the assured, spent the night of December 28, 1953, with his parents after discussing with them his plans to drive his pick-up truck back to Marietta next morning and his expected return the following day to take some Shetland ponies to an auction sale at Rome. Neither that night, nor the following morning, prior to his departure, did he evidence any signs of brooding, anxiety or despondency.

In leaving his parents' home in the early morning, December 29, he had to take the road to the Marietta highway which led by the house where his estranged wife and children were living. They had been separated on a number of occasions before and had been divorced and remarried. This road was rough with pot holes in it.

Shortly after his departure, he was discovered dead in the pick-up. The doors to the truck were locked from the inside, the windows rolled up, and the ventilating fins closed and secured with their locking devices. The truck was apparently standing on the road, and there was no record evidence to indicate that the truck had come to a stop abruptly or accidentally. The sheriff arrived within an hour and was the first person to gain access to the cab. He did this by breaking a ventilator glass, reaching his arm through the opening and unlocking, from the inside, one of the doors. The body was slumped over on the seat with the head towards the right door, the left hand grasping the steering wheel firmly. A single gunshot wound fired from the .22 caliber revolver, which was found in the cab, was located in the right parietal area approximately one and one-half inches above and to the rear of the right ear. When the left door of the cab was first opened, this .22 caliber pistol, from which one bullet had been fired, fell out on the left-hand running board.[1]

The undertaker found no evidence of powder burns. He did find, however, a blue spot above the right eye of the decedent which he thought might have been caused by blood under the skin from some internal force.

There was also found in a tablet lying in the cab two notes or letters, one addressed to decedent's mother, and the other to his wife, which might be construed as indicating that suicide was in his mind.[2] Suicide was also the finding in the death certificate.[3]

---

1. This was the testimony of decedent's brother-in-law, an eye witness to this fact. Appellant makes much of the fact that on this trial, the Sheriff testified that upon opening the door, he saw the pistol lying in the decedent's lap between his legs on the seat, whereas, in a legal proceeding growing out of the same occurrence pending in a Georgia State Court, he had previously testified that on opening the door, the pistol was lying on the floor between the seat and the left door.

This does not alter our ultimate decision as the location of the gun on the seat, beside the seat, or on the running board has no decisive significance; and, if it be contended that the Sheriff's prior inconsistent statement on one point would permit the jury to conclude that it had destroyed his credibility altogether, the Appellant fares no better since all of the facts we deem decisive were either stipulated or established by other independent testimony.

2. Decedent's wife, not a party to the suit, testified that he had on several previous occasions expressed a threat to commit suicide. Even though uncontradicted, in so any words, and coming from a technically disinterested witness, we treat this for our purposes as though the jury could have disbelieved this in the face of counter implications from his parents that on this occasion, at least, he seemed happy and normal and planning his usual activities for days ahead.

Likewise, we put to one side, the two notes found in the truck since sufficient doubt was cast upon their authenticity to raise a jury question on them.

3. Appellant insists that the "Certificate of Death" and "Proofs of Death—Physi-

Georgia, of course, recognizes the traditional approach that the natural inclination to prolong life makes it essential that the finding that life has been ended by willful, self-destruction must be affirmatively established. Gem City Life Insurance Co. v. Stripling, 176 Ga. 288, 290, 168 S.E. 20. Indeed, under an insurance policy of the type sued on here, until the fact of suicide is established by requisite substantial evidence, a legal presumption against suicide is recognized. Up to that stage, the death, if otherwise characterized by sufficient circumstances reflecting fortuitous, external, violent, or similar non-natural causes, would be deemed accidental, and the beneficiary would recover and the insurer would lose on the defense of suicide. Strong as it is, the presumption operates only to the extent of requiring the one asserting suicide to come forward with sufficient evidence to warrant an inference of suicide, Fox v. Mutual B. H. & A. Ass'n, 61 Ga.App. 835, 7 S.E.2d 403, and once that is done, the beneficiary must bear the risk of persuasion of establishing, on the whole record, that the death was from an accidental cause. Gem City Life Insurance Co. v. Stripling, 176 Ga. 288, 290, 168 S.E. 20; Cf. New York Life Insurance Co. v. Ittner, 59 Ga.App. 89, 92, 200 S.E. 522.

Finding no fault with this, indeed asserting not that a verdict for the plaintiff should have been directed, but only that it was for the jury to make the decision, Appellant vigorously contends that since the evidence here points " * * * equally to the theory of death by accident or * * * suicide", Metropolitan Life Insurance Company v. Brock, 87 Ga.App. 919, 75 S.E.2d 663, 664, and " ' * * * equally or indifferently to the theory of accident [or] that deceased came to his death by his own act * * *'," Metropolitan Casualty Insurance Co. v. McAuley, 134 Ga. 165, 177, 67 S.E. 393, 398, the evidence was "not conclusive that the death was suicidal", Hall v. Progressive Life Insurance Company, 61 Ga.App. 792, 7 S.E.2d 606, 609, so that it was for the jury, not the court, to determine this crucial issue.

We cannot agree. Applying these standards as we think a Georgia court would, we are of the clear conviction that this record taken as a whole, and in the light most favorable to Appellant permits but the single inference that the deceased took his own life. Appellant theorizes in brief and argument on possibilities nowhere sustained by evidence, factual or expert, suggesting that this pistol discharged its fatal bullet while laying on the ledge above and behind the driver's seat from accidental bumps on the rough, dirt road. This possible inference is bolstered, Appellant insists, by the position of the revolver on the floor close to the left-hand door. It is also argued that the position of the body lying over toward the right door, the location of the wound, the physical difficulty of holding a 10-inch revolver in the right hand in such a way as to produce the wound and the supposed, apparent course of the bullet, as well as the position of the revolver near the door on the left side raised such substantial doubts that

cian's Statement" identified in the stipulation and introduced by her (without limitation but now stated to have been for the purpose of satisfying a policy requirement for Proof of Loss) containing statements that decedent died from gunshot wounds intentionally self-inflicted were not admissible (or if admitted could not be considered) under § 88–1212 Ga.Code, Woodruff v. American Mutual Liability Insurance Co., 67 Ga. App. 554, 560, 21 S.E.2d 298; Metropolitan Casualty Insurance Co. v. Reese, 67 Ga.App. 628, 630, 21 S.E.2d 455, to establish suicide since these sections were repealed (see Georgia Laws 1945, p. 236); and the Revision of 1945 (recodified into §§ 88–1101 et seq.) provides in § 88–1116 that the Certificate "certify the cause of death" so that § 88–1118, stating that Certificates are "prima facie evidence of the facts stated therein" refers only to the *cause* of death, that is gunshot wound, and not the circumstance (suicide) by which the gunshot wound was received, or the weapon fired. We need not determine this matter as, in our view, the evidence independent of this as well as that discussed in footnotes 1 and 2 compel our conclusion.

such a combination either did or could exist had the decedent willfully fired the gun, that it was for the jury to weigh and draw the conclusions.

But on this record, these are possibilities only and that of the vaguest kind unsupported by anything other than the imaginative resourcefulness of counsel. For there to be a jury issue, it is the evidence, not the suggestions of advocates, which is to be scrutinized to determine whether it contains the germ of substantial fact which would permit reasonable minds to draw contrary inferences and deductions. Here the facts are undisputed and to a large extent stipulated, and as such they afford no basis for a conclusion that death was accidental. A Georgia court would therefore hold that the defense of suicide was established as a matter of law. New York Life Insurance Co. v. King, 28 Ga.App. 607, 112 S.E. 383; Supreme Forrest Woodmen Circle v. Newsome, 63 Ga.App. 550, 11 S.E.2d 480. We can do no other.

The judgment is
Affirmed.