416 P.2d 38

**Ellis I. TIPPETS and Mary A. Tippets, husband and wife, Plaintiffs-Respondents,**

v.

**GEM STATE MUTUAL LIFE ASSOCIATION, INCORPORATED, Defendant-Appellant.**

**No. 9783.**

Supreme Court of Idaho.

June 15, 1966.

As Modified on Denial of Rehearing July 11, 1966.

Gee, Hargraves & Armstrong, Pocatello, for appellant.

Sharp, Anderson & Bush, Idaho Falls, for respondents.

McFADDEN, Chief Justice.

Ellis I. Tippets and Mary A. Tippets, the plaintiffs herein, as named beneficiaries, instituted this action to recover the face

amount, $5,000, of a life insurance policy issued March 24, 1962, by the defendant Gem State Mutual Life Association, Incorporated, on the life of Vernon C. Tippets, deceased, the plaintiffs' unmarried son, who died November 5, 1963, as the result of a gunshot wound in the head.

In their complaint the plaintiffs alleged the issuance of the policy, that premiums had been paid as required, and that the insurance policy was in effect when the assured died; that they had submitted proofs of death as required, but that the defendant company returned only the premiums paid and refused payment of the amount of the policy; that subsequent demand was also made upon the company which was denied. They also alleged they were entitled to reasonable attorney's fees for prosecution of the action and prayed judgment for the amount of the policy and reasonable attorney's fees.

By its answer the defendant admitted the issuance of the policy, and that demand thereunder had been made, but denied that proof of death had been submitted in accordance with the requirements of the contract.

The cause went to trial before a jury on the issues framed by the pleadings. The plaintiffs rested their case, after proving the death of their son, the issuance of the policy, payment of premiums, filing of claim with morticians statement, and their demand. The defendant moved for dismissal, which motion the court denied. The defendant then put on its case, and submitted proof to establish that the assured's death was as a result of suicide. At the close of the case, defendant again moved for dismissal of the action or in the alternative for an advisory instruction to the jury to find for the defendant, which motion was denied. Plaintiffs then reopened the case to submit to the court proof as to reasonable attorney's fees.

Defendant contends that the proof submitted was uncontradicted that the death of the insured was suicidal and by reason of the following exception in the policy, its only obligation under the contract was repayment of premiums:

"If the Assured shall commit suicide, whether sane or insane, within two years from the effective date of the policy, the liability of the Gem State Mutual shall not exceed the total amount of premium paid and no more. After the policy has been in force for a period of two years, self destruction shall be covered for one-half the Face Amount of the Policy."

While no issue of death by suicide was interposed by defendant's answer, the issue was tried without objection [I.R.C.P. 15 (b)], and the jury was instructed by the court on the presumption against suicide. (See Haman v. Prudential Insurance Company, 91 Idaho 19, 415 P.2d 305.)

Nine members of the jury returned a verdict in favor of plaintiffs, and this appeal was taken. The defendant assigns as error: the failure of the trial court to grant their motions for dismissal, or their motion for an instructed verdict; the acceptance of evidence of attorney's fees; the giving of instructions on presumptions in general, and in particular the giving of instructions on the presumption against suicide; the instructions given the jury on the burden of proof; the refusal to admit an exhibit, which was a newspaper clipping concerning the death of the assured; and finally that the verdict is against the law and the evidence and rests only on speculation.

The issue of whether instructions on the presumption against suicide in a case of this nature should be given was discussed by this court in the case of Haman v. Prudential Ins. Co., supra, wherein, it was held that a jury should be instructed on the presumption against suicide, where the trial court had instructed the jury that the burden of proof was on the plaintiff to establish by a preponderance of the evidence that the insured's death was an accident, within the terms of a double indemnity life insurance policy. It should be pointed out herein, however, that the trial court by its instruc-

tions advised the jury that the party "who asserts the affirmative of an issue must carry the burden of proving it", explained the meaning of "burden of proof", and "preponderance of the evidence", and that the burden was on the plaintiffs to establish the facts upon which their case was based by a preponderance of the evidence.

The trial court further instructed the jury by defining a "presumption" and also stated:

> "If the party who is favored by a presumption does not have the burden of proof on the issue to which the presumption relates, then it stands as true until and unless it is overcome by a preponderance of the evidence."

Continuing, the court defined "suicide", and instructed that the law presumes a death to be accidental until the contrary is made to appear; the reason for such presumption; and then stated:

> "The presumption against suicide is not conclusive, but may be overcome not only by verbal testimony, but also by evidence of the circumstances or reasonable deductions from the facts established. The fact of suicide need not be shown beyond a reasonable doubt, but only by a mere preponderance of the evidence."

Following this instruction the court then instructed:

> "In this case, if you are not convinced by the evidence that this presumption has been overcome by the defendant Gem State Mutual Life Association, Inc., in the manner herein explained to you, then you should return a verdict for the plaintiffs. If, however, you are convinced by the evidence in this case that the presumption has been overcome in the manner herein explained to you, then you should return a verdict in favor of the defendant."

Even though the jury was instructed that the defendant had to overcome the presumption of accidental death by a preponderance of the evidence, this is in effect an instruction that the defendant had the burden of

proof of the issue of suicide, yet nowhere did the court instruct as to how this issue came into the case. The court did not instruct the jury that the defendant was interposing as an affirmative defense, under the policy provisions, that the deceased came to his death by suicide. This issue was presented for resolution to the jury by admitting into evidence of the facts surrounding the death, but was not raised by the pleadings. See: Shepherd v. Midland Mutual Life Ins. Co., 152 Ohio St. 6, 87 N.E.2d 156, 12 A.L.R.2d 1250 (1949); Hoholik v. Metropolitan Life Ins. Co., 289 Mich. 242, 286 N.W. 228 (1939); Burrier v. Mutual Life Ins. Co. of New York, 63 Wash.2d 266, 387 P.2d 58 (1963); Jefferson Standard Life Insurance Co. v. Clemmer, 79 F.2d 724 (4th Cir. 1935); Annot. 142 A.L.R. 742; 29A Am.Jur. Insurance §§ 1852, 1855, pp. 914 and 920.

This court in considering whether it was error to refuse to give an instruction on the presumption of due care, in Mundy v. Johnson, 84 Idaho 438, at 450, 373 P.2d 755, at 762, stated: "The rule imposing the burden of proof upon the defendant to establish contributory negligence is in such cases an adequate protection to the rights of plaintiffs." (See also: Drury v. Palmer, 84 Idaho 558, 375 P.2d 125; Domingo v. Phillips, 87 Idaho 55, 390 P.2d 297). In the instant case real doubt is raised as to the propriety of giving the instruction of the presumption against suicide, for as in the cases involving the giving of instructions on the presumption of due care, the burden of proof imposed upon the defendant to establish death by suicide would be adequate protection to the rights of the plaintiffs. By reason of the final conclusions of the court in this case hereinafter discussed, it is unnecessary to determine whether giving of the instruction of the presumption of accidental death and against suicide was error.

Defendant contends that the plaintiffs failed to present due proofs sufficient to satisfy the terms of the policy, and by reason thereof that the trial court erred in not granting their motion to dismiss or

for a directed verdict. The plaintiffs, however, point out that the record discloses that the president of the company, after receipt of their claim and a mortician's statement showing burial of the assured, made no demand upon them for further proof of loss, but instead secured additional information on its own by way of a death certificate executed by the county coroner, and a newspaper clipping, both of which indicated the assured's death was by suicide. Thereafter the company denied all liability under the policy, except for the return of premiums. Under such circumstance, when the insurance company proceeds with its own investigation and makes a determination as to its liability and denies coverage as a result of its own investigation and determination, it is deemed to have waived its right to demand further proof of loss. Theriault v. California Insurance Co., 27 Idaho 476, 149 P. 719 (1915); Price v. North American Acc. Ins. Co., 28 Idaho 136, 152 P. 805 (1915); Aetna Ins. Co. v. Ralls, 200 Okl. 32, 190 P.2d 787 (1948); Western Farm Bureau Mutual Insurance Co. v. Lee, 63 N.M. 59, 312 P.2d 1068 (1957); 45 C.J.S. Insurance § 982(6) and (d) and (h), pp. 1206, 1209; 29A Am.Jur. Insurance § 1431, p. 542.

The defendant's assignment of error directed to the failure of the trial court to grant their motion for dismissal or for an instructed verdict necessitates a review of the evidence presented.

Vernon C. Tippets, the assured, had entered the Army at the age of 17 years, before graduation from high school, but continued his education while in the Army. He served overseas in Korea for a number of months. While he was in the service he acquired a .25 caliber Beretta automatic pistol. He was discharged from the service in February, 1963, and returned to his family's home. He had saved his money while in the service, and had his father purchase him a car on his return. Upon his discharge he was not employed for awhile, but just had a good time until his money ran out. Later he secured employment at various jobs, and finally went to work at a music store, which employment was much to his liking, because of his interest in music. His work was satisfactory as far as his employer was concerned. He also was a professional musician, and it was stated he was looking forward to a musical engagement the week-end following his death. At the time of his death he had no financial problems, for his next paycheck would have paid up every debt he owed. He lived in a house by himself, taking his meals with his parents who lived in a trailer-house a few feet away.

On the day preceding his death, the assured had worked all day, and his family and acquaintenances, at least up until that evening, saw nothing unusual with his attitude. He had a date that evening with a young lady named Diane, in whom he was seriously interested. He had previously asked her to marry him, but was refused, because of differences in religious attitudes, although they were of the same faith. The evening before his death, the two of them again discussed their future together, and he was again rejected by her. They had been together for a couple of hours after she left her employment about 9:00 p. m., and were talking in his car. She testified that he was upset about her refusal to marry him, but not terribly upset; that "he said he had no other reason to live at this time and he pulled his gun out." Assured carried the Beretta pistol in a holster in his car at times. She stated that he didn't say he was going to kill himself, but she put the pistol in her purse, and they continued to talk a little more, and then she gave him back the gun, and he put it in the holster, she then left his car, and went to her car. She did not return home, but went to a cousin, a Mr. Walters, and discussed the conversation with him. Mr. Walters joined Diane, and they went to the music store to see if the assured was there, and not finding him, went out to his house. Walters looked for the Beretta, with which he was familiar, in the assured's car, but couldn't find it. Diane stayed in her car.

Walters then went to the house, knocked on the door and went in. The deceased was playing his guitar, and they talked. Walters testified:

"I asked him, after Diane's statement that she said to me before I went over, what he was trying to do, scare us all to death; I thought he knew better, and he said 'Well, everything's fine now', and he excused himself then and went out to the car to talk to Diane."

While he was out talking again to Diane, Walters searched the room for the pistol, but without success.

After Tippets went outside to Diane's car, they talked some more. When Walters came out after searching for the gun, he saw the two of them sitting in the car talking, and Tippets jumped out of the car, slammed the door and said "Goodbye" and went back into the house. Diane was crying very hard at that time. Walters entered her car and the two of them left and Diane took Walters home.

Mr. Tippets' body was discovered the next morning face down on the floor, at right angles to the bed. The .25 caliber Beretta was near by on the floor, about even with his right hand. The gun had been fired, with an exploded cartridge caught between the slide and the barrel so it hadn't fully ejected. It was testified that the gun had a defective ejector so that the cartridge couldn't properly eject. There was a bullet hole under his chin, with the course of the bullet upwards into the skull. There was a considerable amount of blood on the floor and around his head.

The police officer who responded to the call did not disturb anything, but notified his superior officer. The county coroner, who was a physician and surgeon, came and examined the body. He observed powder burns around the entry wound under the chin. He testified that it was his opinion the death was a suicide.

At the request of the coroner, Dr. Kroll, a pathologist, performed an autopsy limited to the head. His report was admitted into evidence. Therein the pathologist reported,

"The wound is ringed by the imprint of a gun barrel. There are powder burns associated." The course of the bullet, which was recovered from the brain, was described. Attached to the autopsy report was the report of a radiologist based on films of the skull. This report stated: "There is a mettalic [sic] foreign body almost exactly in the mid line and anteriorly measuring half way between the sella and the frontal sinus. The metallic foreign body measures 15x8 mm and is typical of small caliver [sic] bullet."

To fire this particular pistol it was necessary to load a shell in the clip, put the clip in the handle of the gun then pull back the slide to cock it to load the shell into the barrel. There was a safety on the left side of the frame of the gun, and a safety bar on the butt of the gun that had to be depressed before it could fire by pulling on the trigger. There were no tools or equipment in the room that might have indicated the deceased had been cleaning the gun, with it being inadvertently discharged.

There was no evidence of any sort that would lead to an inference that any person other than the deceased himself fired the fatal shot. The fact of the powder burns around the entry wound indicates that the gun was held either in close proximity or in contact with the chin when it was fired, which would discount any possible inference that the gun had fallen and discharged or had discharged while the deceased was handling the gun. The only person who could have definitely stated what happened died as a result of the gunshot wound. There was no testimony or evidence submitted that would refute any of the physical facts concerning Tippets' death.

■ This court in discussing the evidence necessary to rebut the presumption of due care when used in opposition to a claim of contributory negligence has stated:

"* * * *

"The following conclusions however are generally accepted as correct: * * * that if the evidence as against the presumption is clear, convincing, and uncon-

tradicted, such evidence will prevail as a matter of law against the presumption. The other, that if reasonable minds might differ as to the conclusions to be drawn from the evidence opposed to the presumption, the presumption has the weight and effect of evidence to be considered by the jury in connection with the contrary evidence." Geist v. Moore, 58 Idaho 149, 166, 170, 70 P.2d 403, 410 (1937).

The effect of such a statement is to recognize that if there is a conflict in the evidence, the issue of fact is for resolution by the jury, but that if there is conflict in the evidence, which is clear and convincing against the presumption, then the issue becomes one for resolution by the court as a matter of law.

■ Herein there was presented to the trial court, by the motion for dismissal at the close of the case, the question of law as to whether the presumption has been over-come; it is our conclusion that the trial court erred in submitting the issue of suicide to the jury, because the evidence, convincing and without contradiction, shows that the weapon was fired by the decedent himself, and there were no surrounding facts or circumstances from which it would be reasonably inferred that the gun was fired by accident; for this court to avoid this conclusion would in effect wholly eliminate the contractual provisions regarding suicide of the insurance policy.

For other decisions which have reached the same conclusion and have held that as a matter of law the facts presented indicated death by suicide within the terms of a life insurance policy, (as opposed to an accidental death policy) see cases cited in the footnote.[1]

1. Footnote of Citations:
   The following cases have held as a matter of law, that the evidence overcomes the presumption against suicide:
   ARKANSAS:
   Industrial Mut. Indem. Co. v. Watt, 95 Ark. 456, 130 S.W. 532 (1910).
   Mott v. Sovereign Camp, W.O.W., 155 Ark. 259, 244 S.W. 733 (1922).
   New York L. Ins. Co. v. Watters, 154 Ark. 569, 243 S.W. 831 (1922).
   Aetna L. Ins. Co. v. Alsobrook, 175 Ark. 523, 299 S.W. 743 (1927).
   Fidelity Mut. L. Ins. Co. v. Wilson, 175 Ark. 1094, 2 S.W.2d 80 (1928).
   Home L. Ins. Co. v. Miller, 182 Ark. 901, 33 S.W.2d 1102 (1930).
   Brotherhood of Maintenance of Way Employees v. Page, 197 Ark. 498, 123 S.W.2d 536 (1939).
   Mutual Life Ins. Co. v. Sturdivant, 215 Ark. 697, 222 S.W.2d 812 (1949).
   COLORADO:
   Michael v. John Hancock Mut. Life Ins. Co., 138 Colo. 450, 334 P.2d 1090 (1959).
   GEORGIA:
   New York L. Ins. Co. v. King, 28 Ga. App. 607, 112 S.E. 383 (1922).
   Gem City Life Ins. Co. v. Stripling, 176 Ga. 288, 168 S.E. 20 (1933).
   Martin v. Life & Casualty Ins. Co., 84 Ga.App. 618, 66 S.E.2d 754 (1951).
   Hodnett v. Aetna L. Ins. Co., 17 Ga. App. 538, 87 S.E. 813 (1916).
   Pilot Life Ins. Co. v. Wise, 48 Ga. App. 540, 173 S.E. 252 (1934).
   New York L. Ins. Co. v. Bradshaw, 2 F.2d 457 (5th Cir. Ga.1924).
   Boswell v. Gulf Life Ins. Co., 227 F.2d 578 (5th Cir. Ga.1955).
   ILLINOIS:
   Gray v. Metropolitan Life Ins. Co., 308 Ill.App. 1, 31 N.E.2d 85 (1940).
   Knapczyk v. Metropolitan Life Ins. Co., 321 Ill.App. 611, 53 N.E.2d 484 (1944).
   IOWA:
   Inghram v. National Union, 103 Iowa 395, 72 N.W. 559 (1897).
   Gavin v. Des Moines Life Ins. Co., 149 Iowa 152, 126 N.W. 906 (1910).
   Green v. New York Life Ins. Co., 192 Iowa 32, 182 N.W. 808 (1921).
   Warner v. Equitable Life Ins. Co., 219 Iowa 916, 258 N.W. 75 (1934).
   KANSAS:
   Deweese v. Sovereign Camp, Woodman of World, 110 Kan. 434, 204 P. 523 (1922).
   MICHIGAN:
   Connecticut Mutual Life Ins. Co. v. Lanahan, 112 F.2d 375 (6th Cir. Mich.1940).
   MISSISSIPPI:
   Davis v. Reliance Life Ins. Co., 12 F.2d 248 (5th Cir. Miss.1926).
   NEBRASKA:
   Hardinger v. Modern Brotherhood of America, 72 Neb. 860, 101 N.W. 983, 103 N.W. 74 (1904).
   SOUTH CAROLINA:
   McMillian v. General American Life

The judgment is reversed and remanded with directions to enter judgment of dismissal.

Costs to appellant.

McQUADE, TAYLOR, SMITH and SPEAR, JJ., concur.

Ins. Co., 194 S.C. 146, 9 S.E.2d 562 (1940).

TENNESSEE:
Mutual Benefit Health & Accident Ass'n. v. Denton, 22 Tenn.App. 495, 124 S.W.2d 278 (1938).
Supreme Tent K.M. of W. v. King, 142 F. 678 (6th Cir. Tenn.1906).

TEXAS:
Woodmen of World v. Alexander, 239 S.W. 343 (Tex.Civ.App.1922).
Aetna L. Ins. Co. v. Tooley, 16 F. 2d 243 (5th Cir. Tex.1926), Cert.

denied, 273 U.S. 755, 47 S.Ct. 458, 71 L.Ed. 875.

WEST VIRGINIA:
McDaniel v. Metropolitan Life Ins. Co., 195 S.E. 597 (W.Va.1938).
Richardson v. New York Life Ins. Co., 174 F.2d 475 (4th Cir. W.Va.1949).

WISCONSIN:
Agen v. Metropolitan L. Ins. Co., 105 Wis. 217, 80 N.W. 1020, 76 Am.St. Rep. 905 (1899).
Voelkel v. Supreme Tent, K. of M., 116 Wis. 202, 92 N.W. 1104 (1903).